**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | 02-659 |
| | : | |
| JASON ROSE | : | |
| | : | |

**July _28__, 2015**                                          **Anita B. Brody, J.**

<u>**MEMORANDUM**</u>

Defendant Jason Rose's ("Rose") filed an amended motion to withdraw his guilty plea. *See* Am. Mot. to Withdraw Plea, ECF No. 153.  I will deny Rose's motion.

## I. FINDINGS OF FACT

On October 9, 2002, Jason Rose and three co-defendants were indicted by a grand jury on charges of conspiracy to possess with intent to distribute more than 500 grams of cocaine, and possession with intent to distribute more than 500 grams of cocaine.  *See* Indictment, ECF No. 1.  Rose's co-defendants named in the indictment were arrested, and pled guilty in 2004.  *See* Raphael Albert Henry Guilty Plea Agreement, ECF No. 27; Tyrone Sawyer Guilty Plea Agreement, ECF No. 29; Phillip Mack Guilty Plea Agreement, ECF No. 34.  Law enforcement authorities, however, could not locate Rose.  Rose was twice declared a fugitive, and was not arrested until March 11, 2014.  *See* Reports of Speedy Trial Act Delay, ECF Nos. 3, 55.  On April 23, 2014, after his arraignment, Rose retained attorney Michael Engle ("Engle") as defense counsel.[1]

---

[1] Gerald A. Stein briefly represented Rose before Rose retained Engle.  *See* Notice of Appearance of Gerald A. Stein, ECF No. 98; Order Granting Gerald A. Stein's Mot. to Withdraw, ECF No. 108.

On October 15, 2014, Rose pled guilty and is now seeking to withdraw his plea.  On July 16, 2015, I held an evidentiary hearing on Rose's motion to withdraw his plea.  Both Rose and Engle testified.  I make the following findings of fact:

Rose initially informed Engle that he was not interested in pleading guilty, and the parties began to prepare for trial.  In the course of this preparation, Engle requested and received discovery from the Government about the case against Rose.  On motion of the government, and for good cause shown, I issued a protective order.  Pursuant to that order, Engle refrained from copying, reproducing, and disseminating the discovery.  He was specifically forbidden from providing copies to Rose.  *See* Protective Order for Discovery, ECF No. 116.

During the course of his representation of Rose, Engle identified two prior convictions he believed the Government could use to enhance Rose's sentence if Rose were found guilty.  These were a 1996 state marijuana conviction, and a 1998 state criminal mischief and attempted theft conviction.  Rose was adamant that the 1998 conviction pertained to a different individual and that it could not be used against him.  Also, the Government had indicted Rose in 2002—12 years before Rose's arrest and pretrial preparations—but it had not filed the information required to enhance his sentence for either state conviction under 21 U.S.C. § 851.[2]

On October 13, 2014, one day before trial was set to begin, Engle approached the Government and relayed that Rose would plead guilty to a 60 month prison term pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).  Rose's offer initiated the plea process with the Government; up to that point the Government had not engaged in plea negotiations nor offered Rose a plea deal.

---

[2] Unless the Government filed informations for these prior convictions before trial or the entry of a guilty plea, it would have been prohibited from using them to increase Rose's sentence.  *See* 21 U.S.C. § 851(a)(1).

On October 14, 2014, the parties appeared in court for a change of plea hearing. Notwithstanding the fact that Rose had initiated the plea process and proposed the terms of his guilty plea, Rose expressed concern that he may have not had enough time to make an informed decision. *See* Tr. of Change of Plea held on Oct. 14, 2014, at 6:6-6:20, 12:23-13:8, ECF No. 152. To address this, I continued the change of plea hearing to allow Rose additional time to weigh his options. *Id.* at 14:19. When I inquired, Rose indicated that a one-day extension would be sufficient time to make an informed decision. *Id.* at 13:11.

On October 15, 2014, I reconvened the change of plea hearing, and Rose pled guilty. At the change of plea hearing, Rose certified that Engle had fully explained his trial rights and defenses. *See* Tr. of Change of Plea held on Oct. 15, 2014, at 6:4, ECF No. 151. Rose also certified that he had had enough time to talk with counsel, and certified that he was satisfied with Engle's assistance. *Id.* at 6:12. To establish the factual basis for Rose's plea, the Government laid out, in detail, the coast-to-coast drug trafficking conspiracy. The Government also described the events in September 2002 involving the transportation of 4.9 kilograms of cocaine from Los Angeles to Philadelphia that led to the arrest of Rose's codefendants, and eventually, Rose himself. *See id.* at 27:25-33:9. Although Rose took issue with certain facts in the Government's rendition, he admitted that he was involved in the conspiracy and received 4.9 kilograms of cocaine in September 2002. *See id.* at 34:15-34:17. Rose admitted that his conduct satisfied the elements of the offenses with which he was charged. *See id.* at 33:12-33:25.

After entering his plea, Rose discharged Engle and retained Warren R. Hamilton ("Hamilton") as counsel. *See* Notice of Appearance of Warren R. Hamilton, ECF No. 144; Order Granting Michael Engle's Mot. to Withdraw, ECF No. 148. On January 20, 2015, Hamilton filed Rose's request to withdraw his guilty plea. *See* Mot. to Withdraw Plea, ECF No.

145.  On June 25, 2015, Rose amended his motion to include additional arguments.  *See* Am. Mot. to Withdraw Plea.

## II.  LEGAL STANDARD

Federal Rule of Criminal Procedure 11 provides that a defendant may withdraw a guilty plea after the court accepts the plea, but before the defendant is sentenced, if "the defendant can show a fair and just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2)(B).  In determining whether a fair and just reason exists, a court looks to: "(1) whether the defendant asserts [his] innocence; (2) whether the government would be prejudiced by the withdrawal; and (3) the strength of the defendant's reason to withdraw the plea." *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001).  Demonstrating a fair and just reason requires the defendant to overcome a "substantial" burden.  *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003).  "A shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty."  *Brown*, 250 F.3d at 815 (internal quotation marks omitted).

## III.  DISCUSSION

Rose asserts his innocence, claims that he did not understand his discovery before pleading guilty, and claims that the Government acted in violation of DOJ guidelines by stating its intention to file a § 851 information that would have increased his mandatory minimum sentence.  Rose also claims that, for several reasons, Engle provided ineffective assistance of counsel.  Rose has failed to sustain his burden of showing that he is entitled to withdraw his guilty plea.  Thus, Rose's motion to withdraw his guilty plea will be denied.

### A.  Assertion of Innocence

The first factor to consider is Rose's assertion that he is innocent. "Bald assertions of innocence . . . are insufficient to permit a defendant to withdraw [a] guilty plea." *Brown*, 250 F.3d at 818. Assertions of innocence must be "buttressed by facts in the record." *Id.* (internal quotation marks omitted). A defendant must also "explain why contradictory positions were taken before the district court" during the change of plea hearing. *United States v. Jones*, 979 F.2d 317, 318 (3d Cir. 1992), *superseded on other grounds as stated in United States v. Roberson*, 194 F.3d 408, 417 (3d Cir. 1999).

Rose has not sufficiently asserted his innocence. At the hearing on the motion to withdraw, Rose asserted that his brother was involved in illegal activity and that his brother implicated Rose as a means to deflect punishment. Rose's testimony was not credible. At the hearing on the motion to withdraw, Rose admitted that he never told Engle he was innocent during the course of Engle's representation, and that he did not assert his innocence until his amended motion to withdraw, filed 10 months after pleading guilty. Rose failed to explain why he agreed with the Government at his change of plea hearing about his involvement with the conspiracy and the receipt of 4.9 kilograms of cocaine in September 2002. I discredit Rose's assertion that he is innocent.

### B.  Strength of Reasons for Withdrawal of Plea

The next factor to consider is the strength of Rose's reasons for withdrawing his plea.

### 1. Rose's Understanding of his Discovery

Rose testified that he did not understand aspects of his discovery because he did not have enough time to review it with Engle before pleading guilty. *See* Mot. to Withdraw Plea at 2. Rose also testified that Engle was uninterested in his case and that he never received a copy of his discovery. I discredit both assertions.

Rose had sufficient time and resources to make an informed decision.  Although a protective order prohibited Engle from giving Rose a physical copy of his discovery, Engle reviewed these materials extensively with Rose.  Engle credibly testified that, at Rose's request, Engle went through the discovery, document by document, and explained the significance of each.  Engle credibly testified that he spent hours, over multiple meetings, talking to Rose about his discovery, undercutting Rose's assertion that Engle was uninterested in his case.

Furthermore, when Rose initially expressed reservation about whether he wanted to accept the plea he himself proposed, I continued the change of plea hearing to allow Rose additional time.  At the subsequent change of plea hearing, Rose certified that his attorney had "fully explained his trial rights and defenses."  *See* Tr. of Change of Plea held on Oct. 15, 2014, at 6:1-6:4.

### 2.Allegations that the Government acted in Violation of DOJ Guidelines

Rose alleges in his motion that the Government threatened to file a § 851 information, a prerequisite to increasing his sentence by use of a prior conviction, if he did not pled guilty.  Rose maintains that this practice is in violation of unspecified internal Department of Justice guidelines.  *See* Mot. to Withdraw Plea at 2-3.

No evidence exists that the Government contravened any of its guidelines in this case.  Even if it were true that the Government's conduct ran afoul of its own internal guidance, "Department of Justice guidelines and policies do not create enforceable rights for criminal defendants."  *United States v. Wilson*, 413 F.3d 382, 389 (3d Cir. 2005).

### 3. Ineffective Assistance of Counsel

"A court will permit a defendant to withdraw a guilty plea based on ineffective assistance of counsel only if (1) the defendant shows that his attorney's advice was under all the

circumstances unreasonable under prevailing professional norms and (2) the defendant shows that he suffered 'sufficient prejudice' from his counsel's errors." *Jones*, 336 F.3d at 253-54 (citations omitted).  To satisfy the prejudice requirement, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  Rose fails to satisfy either of these prongs.

Rose contends that Engle was ineffective for counseling Rose to plead guilty in order to avoid a potential increased sentence as a result of Rose's two prior convictions.  Rose incorrectly argues (a) that Engle failed to recognize that his 1996 state marijuana conviction would have been inadmissible because of the statute of limitations; (b) that the Government could not have proven that his 1996 state marijuana conviction would have qualified as a "felony drug offense;" and (c) that Engle failed to look into whether Rose was innocent of the 1998 state criminal mischief and attempted theft conviction because it pertained to a different individual.  Because Engle induced Rose to plead guilty to avoid increased punishment that was allegedly inapplicable to Rose's case, Rose argues that Engle was ineffective.  None of Rose's claims have merit.

As for the statute of limitations, Rose argues that the statute of limitations prohibited the Government from using the 1996 state marijuana conviction because the Government failed to file a timely information as required by 21 U.S.C. § 851.  *See* Am. Mot. to Withdraw Plea at 4-6. In support of his argument, Rose cites 18 U.S.C. § 3282(a), the default statute of limitations for non-capital federal offenses.  The statute provides that "no person shall be prosecuted, tried, or punished for any offense, not capital, unless . . . the information is instituted within five years next after such offense shall have been committed."  18 U.S.C. § 3282(a).

18 U.S.C. § 3282, however, is inapplicable to the informations contemplated by 21 U.S.C. § 851.  A § 851 information used for the purpose of a sentencing enhancement is not akin to a criminal information or grand jury indictment that initiates the criminal process against a defendant.  21 U.S.C. § 851 itself provides the only limitation on the timing of filing.  It states that "no person . . . shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court." 21 U.S.C. § 851.  Engle did not misinform Rose.

Rose also argues that the Government could not have demonstrated that his 1996 state marijuana conviction under 35 Pa. Stat. § 780-113 qualified as a "felony drug offense," a classification that would have increased Rose's possible criminal exposure.  Rose appears to argue that a court would be limited to using the "categorical approach" enunciated in *Taylor v. United States*, 495 U.S. 575 (1990), as opposed to the "modified categorical approach" announced in *Shepard v. United States*, 544 U.S. 13 (2005), to determine whether the 1996 state marijuana conviction satisfied all the elements of a felony drug offense as defined in 21 U.S.C. § 802(44).  *See* Am. Mot. to Withdraw Plea at 6-15.

Rose argues that use of the categorical approach would have insulated him from the felony drug offense sentence enhancement.  A court using the categorical approach may "look only to the fact of conviction and the statutory definition of the prior offense."  *Taylor*, 495 U.S. at 602.  A court using the modified categorical approach may additionally consider the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 544 U.S. at 16.  The distinction is relevant because some of the prohibited acts in 35 Pa. Stat. § 780-113 qualify as felony drug offenses, but others do not.  To determine whether the 1996 conviction qualifies as a felony drug

offense, a court would have to determine under which portion of the statute the defendant was convicted. To do this, a court would be required to look to sources outside the Pennsylvania drug statute itself, such as a plea agreement. The categorical approach forbids this inquiry into outside sources, while the modified categorical approach permits it. Rose argues that Engle's counsel was ineffective because Engle allegedly told Rose that such an enhancement might apply when it did not.

Rose misstates the law. The Third Circuit recently analyzed 35 Pa. Stat. § 780-113, the statute under which Rose was convicted, using the modified categorical approach. *See United States v. Abbott*, 748 F.3d 154,156 (3d Cir. 2014). Engle's conclusion that the 1996 conviction might have qualified as a felony drug offense, thus increasing Rose's sentence, is sound. Engle was not ineffective for suggesting that Rose might have avoided additional jail time by pleading guilty.

Finally, Rose argues that Engle was ineffective because he failed to look into whether Rose was innocent of the 1998 conviction because it pertained to a different individual. Rose testified at the hearing that he insisted that Engle look into this defense, but that Engle failed to follow up on it. Engle credibly testified that the 1998 conviction was a source of much discussion during his representation of Rose. Engle credibly stated that he had in fact looked into Rose's claim. Rose has failed to show that Engle's advice was unreasonable under prevailing professional norms.

Even if Engle failed to investigate whether Rose had a defense to the 1998 conviction, or misinterpreted the law with respect to the 1996 conviction Rose would be unable to demonstrate sufficient prejudice to make out an ineffective assistance of counsel claim. Rose's plea deal had such favorable terms that it still would have been in Rose's interest to take the deal

notwithstanding Engle's alleged errors in determining Rose's possible sentence if he went to trial. Rose pled guilty to possession with intent to distribute 4.9 kilograms of cocaine, and entered an 11(c)(1)(C) plea that stipulated a 60 month sentence. Even assuming that neither the 1996 nor 1998 convictions increased his sentence, and that he avoided additional enhancements for playing a leadership role in the conspiracy, obstructing justice while he evaded capture as a fugitive, and participating in other relevant conduct, Rose still would have faced a base offense level of 28. *See* U.S.S.G. § 2D1.1(c). Thus, even making every possible assumption in Rose's favor, his Guidelines range would have been 78-97 months, a minimum of a year and a half longer than his plea.[3]

### C. Prejudice to the Government

The final factor to consider is whether Rose's withdrawal of his plea would prejudice the Government. "[T]he Government need not show [] prejudice when a defendant has failed to demonstrate that the other factors support a withdrawal of the plea." *Jones*, 336 F.3d at 255. Nonetheless, the Government correctly argues that it would be prejudiced by Rose's withdrawal of his guilty plea. Rose's indictment was issued in 2002; Rose was not arrested until 2014. The Government initially prepared for trial in this matter after Rose indicated no interest in pleading guilty. Requiring the Government to again prepare witnesses for a case that is over a decade old would be difficult and burdensome.

## IV. CONCLUSION

For the reasons discussed above, I will deny Rose's motion to withdraw his guilty plea.

---

[3] The Government postulates that, if relevant enhancements and criminal history were considered, Rose's guideline sentence would at least range from 210-262 months. *See* Resp. to Am. Mot. to Withdraw Plea at 5 n.2, ECF No. 155.

S/Anita B. Brody, _____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:        Copies **MAILED** on _____ to:

O:\ABB 2015\L - Z\USA v Rose withdraw guilty plea memo 7.28 2pm.docx